IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Auto-Owners Insurance Company, ) | Civil Action No. 5:17-cv-02943-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| The Cincinnati Insurance Company, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Auto-Owners Insurance Company filed this declaratory judgment action against Defendant The Cincinnati Insurance Company seeking a declaration by the court that a commercial general liability policy ("CGL") issued by Plaintiff to Hamilton and Dorothy Williams (the "Named Insureds") and bearing policy number 072316-35293100-12 (the "Policy") does not provide coverage to Defendant's insured, Melvin K. Younts, with regard to the lawsuit styled *Mary Joan Ball v. Melvin K. Younts*, 2016-CP-38-00295, which was tried to a verdict in the Court of Common Pleas for Orangeburg County (the "Underlying Action"). (ECF No. 1.) In the alternative, Plaintiff seeks a declaration that the Policy sits in excess over Defendant's policy issued to Younts and does "not drop down to provide coverage since the limits of [Defendant] Cincinnati's policy in question were sufficient to pay off the judgment entered against Mr. Younts in the Underlying Action." (ECF No. 40 at 2.) In response to the foregoing, Defendant counterclaims against Plaintiff seeking (1) a declaration that Younts is an insured under the Policy and (2) contribution from Plaintiff for one-half of the $214,000.00 used to settle the Underlying Action. (ECF No. 9 at 4 ¶ 27–8 ¶ 49.)

This matter is before the court on the parties' cross Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 40, 41.) The parties

1

oppose each other's Motions respectively. (ECF Nos. 47, 48.) For the reasons set forth below, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of costs and interest. (ECF No. 1 at 1 ¶ 1–2 ¶ 4.)

## II. RELEVANT BACKGROUND TO THE PENDING MOTIONS

In the Underlying Action, Ball alleged that she was injured on May 7, 2013 at or around 11 p.m., when she slipped and fell in the parking lot outside of The Liquid Center, one of the tenants of the Orangeburg Plaza Shopping Center. (ECF No. 40-9 at 9 ¶¶ 14–18.) "Hamilton Williams and Eston Williams, Jr., owned the portion of the Orangeburg Plaza shopping center where Liquid Center and the surrounding parking area were physically located." (ECF No. 41-1 at 2.) "Younts, along with some family members, owned other portions of the Orangeburg Plaza shopping center that did not include Liquid Center and the surrounding parking area." (*Id.*) "Ball asserted her accident resulted from the poorly maintained condition of the parking lot." (*Id.* at 3.)

On or about March 1, 2016, Ball filed the Underlying Action alleging claims against Younts, Hamilton Williams, and others[1] for premises liability, negligent and reckless conduct, and negligence per se. (ECF No. 1-2 at 2–11.) Defendant immediately provided a defense for Younts in the Underlying Action, while Plaintiff eventually agreed to provide Younts a defense pursuant to a reservation of rights. (*See* ECF No. 41-7.) The Underlying Action proceeded to trial on

---

[1] The other defendants in the Underlying Action were Younts Investments, LLC; Younts Properties, Inc.; Eugene Hay; Patricia Ann Fiddie; Linda Francis Felkel; Michael David Hay; Liquid Center, Inc.; and Eston Ernest Williams, Jr. (*See* ECF No. 1-2 at 1.)

2

November 13, 2017, and "[t]he jury returned a verdict against Mr. Younts in the amount of $314,001.32 but found Ms. Ball to be 50% negligent." (ECF No. 41-1 at 4.) "Pursuant to the terms of a pre-trial agreement, [Defendant] CIC paid $214,000 to satisfy the judgment against Mr. Younts following the verdict." (*Id.*)

On October 31, 2017, Plaintiff filed the instant declaratory judgment action in this court. (ECF No. 1.) On December 21, 2017, Defendant filed its Answer and asserted counterclaims for declaratory judgment and for contribution. (ECF No. 9.) Plaintiff answered Defendant's counterclaims on December 22, 2017. (ECF No. 11.) After engaging in discovery, each party respectively moved for summary judgment on January 18, 2019, and responded to their opponent's Motion for Summary Judgment on February 1, 2019. (*See* ECF Nos. 40, 41, 47, 48.)

Thereafter, on March 5, 2019, the court heard oral argument from the parties on the instant Motions. (ECF No. 54.)

### III. LEGAL STANDARD

A. <u>Declaratory Judgment Actions</u>

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action

3

is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

B. <u>Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>Anderson</u>, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

C.   General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. Nat'l Fid. Life Ins. Co.*, 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *M&M Corp. of S.C. v. Auto–Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no

5

authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

## IV. ANALYSIS

A.  The Parties' Arguments

   *1. Plaintiff*

In its Motion, Plaintiff argues it is entitled to summary judgment because Younts does not qualify as an insured under the Policy. Plaintiff focuses its arguments on the provision setting forth that an insured can be "[a]ny person . . . or any organization [] acting as your real estate manager." (ECF No. 1-1 at 35 § II, ¶ 2(b).) Specifically, Plaintiff asserts that Younts could not have been the Williamses' real estate manager under the Policy because he failed to possess a license. (ECF No. 40 at 14 (citing S.C. Code Ann. § 40-57-20 ("It is unlawful for an individual to act as a . . . real estate property manager . . . without an active, valid license issued by the [South Carolina Real Estate Commission]. . . .")).) Plaintiff next asserts that there is no evidence of a written real estate management agreement between the Williamses and Younts designating him their property manager for the Shopping Center. (*Id.* at 15–16.) To this point, Plaintiff asserts that "all of the facts developed through litigation in both the Underlying Action and this Coverage Action establish, at most, a fairly typical lessor-lessee relationship between Mr. Younts and the Williamses, which relationship alone has been held insufficient to qualify the lessee as a 'real estate manager' for CGL coverage purposes by numerous other federal district and appellate courts." (*Id.* at 17 (citing, *e.g.*, *Moon v. Cincinnati Ins. Co.*, 592 F. App'x 757, 758–59 (11th Cir. 2014) (the term "real estate manager," as used in the "Who is An Insured" provision of the Subject AO Policy, has an accepted meaning in the insurance industry that contemplates "real estate transactions rather than routine maintenance.")).) Finally, Plaintiff contends that there is not any evidence to support a finding that Younts undertook property management activities at the

Shopping Center on the Williamses' behalf and with their knowledge. (ECF No. 40 at 18–20.)

As to the "total insuring intent of the Policy,"[2] Plaintiff argues that (1) the Policy "contemplates only risk associated with a lessor whose lessee . . . is solely responsible for maintaining the parking lot" and (2) Defendant "specifically evaluated, underwrote and insured Mr. Younts and his company, Younts Properties, for the exact loss that was reduced to judgment against Mr. Younts in the Underlying Action." (*Id.* at 22.)

*2. Defendant*

In its Motion for Summary Judgment, Defendant asserts that because Younts "acted as a property manager for Hamilton Williams and Eston Williams, Jr.," Younts is covered under the Policy based on the provision defining an insured as "[a]ny person, . . . or any organization while acting as your real estate manager." (ECF No. 41-1 at 6 (citing ECF No. 1-1 at 35 § II, ¶ 2(b)).) Defendant asserts that Younts "managed the entire property at the Orangeburg Plaza shopping center, including portions of which he was a partial owner as well as areas owned by Hamilton Williams and Eston Williams, Jr., such as the physical location of Liquid Center bar." (*Id.* at 3.) As support, Defendant cites to the testimony of Younts (*see* ECF No. 41-3 at 3:24–4:12) and Eston Williams, Jr. (*See* ECF No. 41:2 at 4:16–11:5 ("He did manage the property.").)

Because Younts is an insured under the Policy, Defendant next asserts that Plaintiff "is required to share contribution for the loss in equal shares" because "the insurance policies []

---

[2] Plaintiff asserts that "total policy insuring intent" is an analysis that "focuses on the insuring intent of the insured and insurer when apportioning liabilities among multiple insurers." (ECF No. 40 at 21 (citing *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 204 (S.C. 1997)). According to Plaintiff, "[t]o discern the true insuring intent, a court should focus on the following factors in conducting this analysis: (a) the wording of the policies, including the 'other insurance' clauses; (b) the stated coverage provided in the policies; (c) the premium paid for such coverage; (d) any requirements in the policy that the insured have underlying insurance policies; and (e) other relevant factors." *Id.*

7

provide for contributions in equal shares." (*Id.* at 8.) The provisions in the Policy governing issues of other insurance are as follows:

4. **Other Insurance**
    If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

    a.  **Primary Insurance**

        This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.

    b.  **Excess Insurance**

        This insurance is excess over:

        (1) Any of the other insurance, whether primary excess contingent or any other basis:

            (a) That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for "your work"
            (b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;
            (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
            (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A - Bodily Injury and Property Damage Liability.

        (2) Any other primary insurance available to an insured, other than an additional insured, covering liability for damages arising out of the premises or operations or the products and completed operations for which you have been added as an additional insured by attachment of an endorsement.

…

    c.  **Method of Sharing**

        If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(ECF No. 1-1 at 37–38 ¶ 4(a).) In considering the foregoing, Defendant argues that (1) "none of the circumstances outlined in subparagraph (1) of the excess insurance provisions are implicated"; and (2) subparagraph (2) is inapplicable because Defendant's policy on Younts was not intended to cover damages arising out of the Williamses' ownership of The Liquid Center. (ECF No. 41-1 at 10–11.) In this regard, Defendant asserts that "[b]ecause both CIC and Auto-Owners provide primary coverage, the method of sharing provided in both policies requires contribution in equal shares." (*Id.* at 11.)

B.  <u>The Court's Review</u>

To resolve the parties' dispute in this matter, the court must determine whether Younts is an insured under the Policy's provisions. At the outset, the court observes that the parties do not appear to dispute that the Policy's only definition of insured that is capable of implicating coverage for Younts provides that an insured is "[a]ny person (other than your 'employee' or 'volunteer worker'), . . . while acting as your real estate manager." (*See* ECF No. 1-1 at 35 § II, ¶ 2(b).) The parties also appear to agree that the Policy does not define the term "real estate manager" and they couch their arguments to persuade why the court should adopt their suggested definition of that term.[3] However, while the parties focus their attention on defining "real estate manager," the court

---

[3] In expressing their contentions, the parties failed to cite to, and the court has not located, a South Carolina appellate court decision expressly addressing a "while acting as your real estate manager" provision of an insurance contract. Additionally, neither party has requested certification of this issue to the South Carolina Supreme Court. Thus, as a federal court sitting in diversity, this court "must predict how the South Carolina Supreme Court would decide the issue." *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, C/A No.: 4:16-cv-03666-RBH, 2017 WL 2216298, at *5 (D.S.C. May 19, 2017) (citing *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a

9

finds that interpretation of this term is unnecessary because the dispute's resolution ultimately occurs pursuant to an assessment of the "while acting as" term.

Because "while acting as," like "real estate manager," is undefined in the Policy, the court is able to define the term in accordance with "its plain, ordinary, and popular meaning." *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.*, 663 S.E.2d 492, 495 (S.C. 2008) (citation omitted); *see also Anderson v. Buonforte*, 617 S.E.2d 750, 754 (S.C. Ct. App. 2005) ("When a term is not defined within a contract, evidence of its usual and customary meaning is competent to aid in determining its meaning." (citation omitted)); *USAA Prop. & Cas. Ins. Co. v. Rowland*, 435 S.E.2d 879, 881–82 (S.C. Ct. App. 1993) ("In the absence of a prescribed definition in the policy, the term should be defined according to the ordinary and usual understanding of the term's significance to the ordinary person."). To this end, while South Carolina appellate courts have not construed the "while acting as" term of the provision at issue, it has come to mean in the context of an insurance contract "acting in that capacity at the time of the occurrence which caused [the Underlying Action's] plaintiff's injury." *Bewig v. State Farm Fire and Cas. Ins. Co.*, 848 S.W.2d 521, 522 (Mo. Ct. App. 1993). This construction has been consistently used by other courts in assessing coverage for identical "while acting as" provisions. *See, e.g.*, *Black v. Grange Ins. Ass'n*, No. C08–1699Z, 2009 WL 4110300, at *9 (W.D. Wash. Nov. 19, 2009) (denying coverage because the complaint failed to allege that the underlying plaintiff's injuries occurred while Black, a resident of the property, was acting in his capacity as the named insured's real estate manager);

---

situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted))). "In predicting a ruling by the South Carolina Supreme Court, [the Court] may also consider, inter alia: restatements of the law, treatises, and well considered dicta," *id.*, "as well as the practices of other states." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted)).

*Dempsey ex rel. Dempsey v. Clark*, 847 So.2d 133, 139 (La. Ct. App. 2003) ("[T]he unambiguous language of the [while acting as real estate manager] policy, as well as logic based on the purpose of a rental dwelling policy, require that the plaintiff's injuries for which insurance coverage is sought must occur while the alleged insured was acting in the capacity of real estate manager for the named insured."); *Russell v. Clapp*, 201 S.W.3d 99, 103 (Mo. Ct. App. 2006) (requiring a showing that the alleged insured was a real estate manager and that the injury arose from the alleged insured's activities as a real estate manager); *Bewig*, 848 S.W.2d at 522 ("It is plaintiff's burden to establish that coverage existed. That burden requires that plaintiff establish that Linda was a real estate manager of the property, and that the injury occurred while she was acting in that capacity.").

Upon its review, the court observes that there are not any allegations or evidence demonstrating that the Underlying Action's plaintiff's Mary Joan Ball's injuries occurred while Younts was acting in the capacity as the Policy's Named Insureds' real estate manager. Specifically, the record is totally silent regarding Younts' status/role as to real estate management activities when Ball suffered her injuries at or around 11 p.m. on May 7, 2013. *E.g.*, *W. All. Ins. Co. v. N. Ins. Co. of N.Y.*, 176 F.3d 825, 830–33 (5th Cir. 1999) (discussing whether the underlying complaint alleged that the alleged insured was acting in his capacity as a building manager for the named insured when he hired an uncertified handyman rather than a professional to install a water heater and when he failed to inspect dysfunctional smoke detectors); *Russell*, 201 S.W.3d at 103 ("On the day of the dog bite, [alleged real estate manager] Clapp had finished work around noon and, at the time of the injury, was watching television inside the trailer home. . . . Under these facts, Clapp was not engaged in property management activities for Edward and Louise Clapp and is, therefore, not an insured under the [] policy."); *Bewig*, 848 S.W.2d at 522 ("The record is silent

about [alleged real estate manager] Linda's activities at the time of the occurrence."). Accordingly, after considering the Policy, the facts as alleged in the Underlying Action, and the relevant case law, the court finds that the evidence does not support application of the Policy's "while acting as your real estate manager" provision to create coverage for Younts as the real estate manager of the Named Insureds. Accordingly, the court must grant Plaintiff's Motion for Summary Judgment.

V.   CONCLUSION

Upon careful consideration of the entire record, the court **GRANTS** Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment (ECF No. 40) and **DECLARES** that the CGL Policy No. 072316-35293100-12 does not provide coverage to Melvin K. Younts for the claims asserted in the Underlying Action. As a result of the foregoing, Plaintiff Auto-Owners Insurance Company does not have any duty to either provide Younts with a defense in the Underlying Action or indemnify Defendant The Cincinnati Insurance Company for the amount of any judgment in the Underlying Action. The court further **DENIES** Defendant The Cincinnati Insurance Company's Motion for Summary Judgment. (ECF No. 41.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 6, 2019
Columbia, South Carolina